# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

LINDSAY M. GREEN,       )
        Plaintiff,       )
                     )
     v.                )       CAUSE NO.: 1:12-CV-00094-JEM
                     )
CAROLYN W. COLVIN,      )
Acting Commissioner of the    )
Social Security Administration,  )
        Defendant.     )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lindsay M. Green on March 23, 2012, and on Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 18], filed on November 14, 2012. Plaintiff requests that the Administrative Law Judge's decision to deny her disability benefits and supplemental security income be reversed and remanded for further proceedings. On February 21, 2013, the Commissioner filed a response, and on May 2, 2013, Plaintiff filed a reply. For the reasons set forth below, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On October 29, 2008, Plaintiff filed an application for a period of disability, seeking disability insurance benefits. On February 2, 2009, Plaintiff filed an application seeking supplemental security income. Plaintiff alleged that she became disabled on December 31, 2007. Plaintiff's application was denied initially on May 4, 2009, and subsequently upon reconsideration on June 19, 2009. On July 12, 2010, Administrative Law Judge ("ALJ") John Pope held a hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On October 7, 2010, the

1

ALJ issued a decision denying Plaintiff's application.

The ALJ made the following findings under the required five-step analysis:

1.   The claimant met the insured status requirements of the Social Security Act through December 31, 2012.

2.   The claimant engaged in substantial gainful activity from the alleged onset date of December 31, 2007, through October 2008. (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq*. and 416.971 *et seq*.).

3.   However, there had been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4.   The claimant has the following severe impairments: bipolar disorder, substance addiction disorder, personality disorder, neuropathy, history of lumbar strain with recent onset radiculopathy. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

5.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1426, 416.920(d), 416.925 and 416.926).

6.   The claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following exceptions: the claimant is limited to unskilled work involving only occasional contact with the public and coworkers. She is further limited to only occasional fingering bilaterally.

7.   The claimant is capable of performing past relevant work as a hand packer. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity. (20 C.F.R. §§ 404.1565 and 416.965).

8.   The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2007, through the date of this decision. (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

On January 20, 2012, the Appeals Council denied Plaintiff's request for review, leaving the

ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636© and 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

**A.    Mental Health Evidence**

Plaintiff was twenty-seven years old on her alleged disability onset date and thirty years old on the date of the ALJ's decision. She had a GED and previously worked as a waitress and hand packer.

On November 18, 2006, Plaintiff was admitted to Parkview Hospital for a suicide attempt. She was discharged on November 22, 2006, with a diagnosis of bipolar disorder, post traumatic stress disorder, and polysubstance abuse. On December 3, 2007, Plaintiff was again admitted to Parkview for a suicide attempt. She was discharged on December 7, 2007, with a diagnosis of bipolar disorder, chemical dependency, and borderline personality disorder.

On January 7, 2008, Plaintiff began outpatient treatment at Park Center, where she was diagnosed with cannabis dependence, alcohol dependence, and bipolar disorder, and it was noted that she was forgetful of recent events, sometimes unable to stay on task, and sometimes had difficulty with working relationships. Plaintiff was still receiving treatment at Park Center at the time of the administrative hearing. Her treatment included psychiatric and psychological evaluations, medication, group skills classes, and individual counseling.

On April 21, 2009, clinical psychologist Wayne J. Von Bargen performed a mental status examination. His diagnostic impression was that Plaintiff was suffering from bipolar disorder,

polysubstance dependence in partial remission, and borderline personality disorder.  He found that "[a]s a worker, her relationships with others may be marked by conflict, and her productivity and longevity may be erratic and unpredictable."  AR 801.

On April 30, 2009, state psychiatric consultant Stacia Hill performed a psychiatric review and completed a Mental Residual Functional Capacity Questionnaire.  She found that Plaintiff had affective, personality, and substance addiction disorders, and that she suffered a moderate degree of limitation in maintaining social functioning and in maintaining concentration, persistence, or pace.  Dr. Hill noted that Plaintiff was moderately limited in her ability to carry out detailed instructions and in her ability to maintain attention and concentration for extended periods.  She determined that Plaintiff's attention and concentration were moderately impacted, but were reasonable for performing simple tasks.  She also found that Plaintiff has difficulty getting along with others, but could tolerate interactions needed for performing tasks.  Dr. Hill concluded that Plaintiff would be able to complete uncomplicated tasks on a sustained basis without special considerations, but preferably with limited social interaction.

On June 30, 2010, Dr. Donald Marshall, Plaintiff's treating psychiatrist, submitted a "Mental Residual Functional Capacity Questionnaire."  He noted diagnoses of bipolar disorder and alcohol and cannabis dependence in remission, with primary symptoms including reports of fluctuating mood, severe anxiety, and racing thoughts.  He indicated that Plaintiff's prognosis was fair.  Dr. Marshall also indicated that Plaintiff would be unable to meet competitive standards for completing a normal workday and workweek without interruptions from psychologically based symptoms, for responding appropriately to changes in a routine work setting, and for dealing with normal work stress.  He indicated that Plaintiff would likely be absent from work about four days per month

because of her impairments and/or treatment. Dr. Marshall opined that Plaintiff was "seriously limited but not precluded" in terms of understanding, remembering, and carrying out detailed instructions.

## B. Medical Evidence

On November 26, 2007, Plaintiff was examined by Dr. Bhupendra K. Shah for body pain and for tingling and lost sensation in her hands and feet. On December 11, 2007, after nerve conduction studies and an EMG, Dr. Shah concluded that the tests suggested Plaintiff suffered from a mild to moderate degree of peripheral neuropathy which was sensory and motor in nature.

On February 7, 2008, Plaintiff reported numb legs, lost sensation in arms, and burning pain from the inside to Dr. Shah. On examination, he found hypo-reflexia and glove and stocking hypothesia. An MRI scan of her cervical spine was normal. On March 6, 2008, Dr. Shah concluded that an MRI scan of Plaintiff's brain was negative and her neurological examination was unremarkable except for hypo-reflexia.

On November 26, 2008, Plaintiff saw Dr. Bhaktvatsala R. Apuri for chest pain. After examination, the physician's impressions were that Plaintiff suffered from atypical chest pain, depression, bipolar affective disorder, and fibromyalgia. On January 9, 2009, Plaintiff saw Dr. Apuri for a follow up appointment. Dr. Apuri noted that Plaintiff's echocardiogram, EKG, and stress test were normal. The physician's impressions were that Plaintiff suffered from atypical chest pain, gastroesophageal reflux disease, depression, bipolar affective disorder, and fibromyalgia.

On February 2, 2009, neurologist Dr. Paul E. Later examined Plaintiff and diagnosed motor sensory neuropathy. He recommended orthotics to help with Plaintiff's foot discomfort and the use of carpal tunnel braces at night to assist with nocturnal paresthesias.

On April 25, 2009, state examining physician Michael E. Holton reported that Plaintiff had a history of neuropathy and, after performing a grip test, noted that repetitive use of either hand led to neuropathy symptoms.

On May 4, 2009, non-examining agency physician J. Sands completed a Physical Residual Functional Capacity Assessment. He found that Plaintiff could occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk about six hours in an eight-hour work day; sit for about six hours in an eight-hour work day; and push and/or pull in an unlimited amount. He found that Plaintiff was limited to fingering only occasionally with bilateral hands.

On July 6, 2009, Plaintiff saw Dr. William Hedrick at the Center for Pain Relief. He noted a diagnostic impression of bilateral sacroilitis, cervical thoracic myofascial pain syndrome, stage 4 sleep deprivation, and bipolar disorder. At the time, she was taking prescription medications of Neurontin, Rozerem, Vicodin, Robaxin, and Percocet. By September 29, 2009, her prescription medications included Flexeril, Rozerem, Cymbalta, Percocet, MS ER, and Skelaxin, although she stopped taking Cymbalta because it made her bipolar disorder flare toward mania. On October 16, 2009, Dr. Hedrick performed a left sacroiliac joint steroid injection and left lumbar facet steroid injections. On October 27, 2009, he added prescriptions for physical therapy and Elavil. On November 12, 2009, surgeon Daniel Roth performed a right L5 lumbar transforaminal epidural steroid injection, and she reported improvement from the injection on November 20, 2009, at her follow-up appointment. The record contains medical records from the Center for Pain Relief through March, 2010, including continued reports of pain. She was treated with a cervical interlaminar epidural steroid injection that gave her some relief and a right metatarsal phalangeal

joint injection that helped for a few days. She continued to take medications including Valium, Nucynta, Elavil, Skelaxin, MS ER, Percocet, and Ultram.

## C.    Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she withdrew from school because she could not follow or pay attention to the material, felt socially awkward, and was frequently disciplined for insubordination. She testified that she quit her job because it was "too hard," she was having problems getting along with people, and had problems with her emotional ups and downs. Plaintiff also testified that she has difficulty controlling her emotions in the workplace because of her psychological conditions. Plaintiff testified that she has either quit or been asked to leave her past jobs because she has acted very inappropriately.

Plaintiff testified that it is difficult for her to concentrate. She has difficulties completing tasks, following steps in order, and following through with tasks. Plaintiff testified that she no longer drinks alcohol, but that she used to drink until she became intoxicated several times a week. She also testified that she stopped using cocaine three years ago, but still uses marijuana once every few months.

## D.    Vocational Expert's Testimony

At the administrative hearing, the VE identified Plaintiff's past relevant work as waitress, classified as light semi-skilled work, and hand-packer, classified as light unskilled work. The ALJ asked a series of hypotheticals. He testified that an individual of Plaintiff's age, education, and experience, limited to medium, unskilled work involving only occasional contact with the public and co-workers, who could only occasionally finger bilaterally, could perform Plaintiff's past work as a hand packer but not as a waitress. The VE identified medium unskilled entry-level jobs of laundry

worker and hand-packer that someone with those qualifications could perform, and light jobs of cashier and hand-packer.

The ALJ asked the VE for the amount of time someone has to be "on task" in a work day for any unskilled jobs. The VE testified that such a person would have to be on task approximately ninety-five percent of the day. The VE also testified that one day a month is the maximum level of acceptable absenteeism for unskilled work. When asked whether there were jobs Plaintiff could do, assuming her testimony was credible and supported by the evidence, the VE testified that it would be difficult for her to sustain work because of her interpersonal difficulties and history of being let go.

**E.    The ALJ's Decision**

The ALJ determined that Plaintiff suffered the severe impairments of bipolar disorder, substance addiction disorder, personality disorder, neuropathy, and history of lumbar strain with recent onset radiculopathy but did  not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1426. The ALJ found that Plaintiff had the residual functional capacity to perform medium work, limited to only occasional fingering bilaterally and limited to unskilled work involving only occasional contact with the public and coworkers. The ALJ found that Plaintiff could perform her past relevant work as a hand packer.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will

reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have

an impairment or combination of impairments that are severe?  If not, the claimant is not disabled,

and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet

or equal a listed impairment in the appendix to the regulations?  If yes, the claimant is automatically

considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the

claimant's past relevant work?  If yes, the claimant is not disabled, and the claim is denied; if no,

then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's

RFC, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is

denied; if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see*

*also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC.  The

RFC "is an administrative assessment of what work-related activities an individual can perform

despite her limitations."  *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR

96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted).  The RFC

should be based on evidence in the record.  *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing

20 C.F.R. § 404.1545(a)(3)).  The claimant bears the burden of proving steps one through four,

whereas the burden at step five is on the ALJ.  *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*,

55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by improperly weighing the opinion

of Plaintiff's treating psychiatrist, Dr. Donald Marshall, and by failing to include Plaintiff's

limitations in concentration, persistence, and pace in the hypothetical to the VE.  The Commissioner

argues that the ALJ's decision is supported by substantial evidence. The Court considers each of Plaintiff's arguments in turn.

## A.  Weight of Treating Psychiatrist's Opinion

Plaintiff argues that the ALJ erred by not giving sufficient weight to the opinion of Dr. Marshall, Plaintiff's treating psychiatrist. The Commissioner contends that the ALJ considered the opinion of Dr. Marshall, but reasonably found that it was entitled to little weight.

When a treating source's opinion is well-supported by objective medical findings and not inconsistent with other evidence it is entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2). Generally, a treating source's opinion is given more weight than a non-treating source's opinion. *Id.* In deciding how much weight to give a doctor's opinion, the factors an ALJ considers are: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(I)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder,* 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates

his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Plaintiff argues that the ALJ improperly weighed Dr. Marshall's opinion and that the ALJ should have awarded Dr. Marshall's opinion controlling weight, particularly his conclusion that Plaintiff would have to miss about four days of work per month. The Commissioner argues that the ALJ properly evaluated the opinion of Dr. Marshall. Dr. Marshall submitted a standard form medical questionnaire assessing Plaintiff's mental residual functional capacity. The ALJ afforded little weight to the form because, as he describes, the opinion did not include narrative explanation, primarily relied upon the claimant's subjective reports rather than objective evidence, did not provide a basis for Dr. Marshall's opinion or indicate the extent to which Plaintiff's substances abuse would cause restrictions, and the assessment of Plaintiff's ability to interact with others appeared inconsistent with other evidence in the record. Plaintiff argues that each of the ALJ's reasons was baseless or improper and attacks each in turn. In essence, Plaintiff agrees that the ALJ considered the relevant factors when deciding not to afford Dr. Marshall's opinion controlling weight, but disagrees with his conclusions on how the factors should be weighed.

First, Plaintiff argues that the ALJ erred in discounting the questionnaire for its failure to include a narrative, since the ALJ also must look to the treatment records. Check-box forms are entitled to more weight when supported by medical records or when they include fully-completed narrative sections. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Although there is only a single treatment note from Dr. Marshall, Plaintiff points to the team approach utilized by Park Center and the extensive treatment records from other health professionals from that team, arguing that they comprise treatment records in support of the questionnaire. The ALJ did consider other

Park Center records in his opinion, and reasonably discounted the questionnaire because there was insufficient narrative explanation to interpret or "translate" the checkmarks. *Craft*, 539 F.3d at 677.

Next, Plaintiff argues that the ALJ erred in concluding that Dr. Marshall's opinion primarily relied on Plaintiff's subjective reports rather than objective evidence. The mental RFC form completed by Dr. Marshall includes a section for clinical findings, and in that section of the form Dr. Marshall wrote: "Report fluctuating mood, severe anxiety, racing thoughts." AR 1083. Plaintiff argues that the ALJ erred in characterizing these statements as "subjective reports." Plaintiff cites to Social Security Ruling 96-4p to support her proposition that some symptoms become signs if they are manifestations of an abnormality that can be shown by acceptable clinical diagnostic techniques. SSR 96-4p, 1996 WL 374187, at *1 n.2, 1996 SSR LEXIS 11, at *3 n.2 (Jul. 2, 1996) ("[S]ymptoms, such as pain, fatigue, shortness of breath, weakness or nervousness, are an individual's own perception or description of the impact of his or her physical or mental impairment(s). . . However, when any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'"). Plaintiff argues that symptoms recorded on the questionnaire are manifestations of bipolar disorder and thus constitute diagnostic findings. However, as the Commissioner points out, Dr. Marshall did not include any clinical reports or mental status examination findings. The only information on the form is of Plaintiff's reported symptoms.

Third, Plaintiff argues that the ALJ erred in failing to examine the length and frequency of Dr. Marshall's treatment of Plaintiff, who apparently saw Plaintiff every three months as part of her treatment at Park Center. The opinion of a physician who has a long-term treatment relationship with a claimant is generally afforded more weight than that of an examining physician or a physician

who only treated a claimant a few times. *White v. Barnhart*, 415 F.3d 654, 658-59 (7th Cir. 2005) (citing *Black & Decker v. Nord*, 538 U.S. 822, 832 (2003)); 20 C.F.R. § 404.1527(c)(2). In this case, the ALJ explained his reasoning: "Unfortunately, the undersigned cannot compare Dr. Marshall's treatment notes—nor can the length and frequency of treatment be fully examined—as those notes do not appear in the record." AR 33-34. In her reply brief, Plaintiff argues that the ALJ had a duty to obtain those notes, since it is the ALJ's duty to develop and obtain medical records. Although the Plaintiff has waived the argument by raising it for the first time in her reply brief, *see Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004), the Court will address the argument briefly. "[T]he

claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck*, 357 F.3d at 702 (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). It is the ALJ's responsibility to "make an initial request for evidence from your medical source and . . . if the evidence has not been received, [he or she] will make one followup request to obtain the medical evidence necessary to make a determination." 20 C.F.R. § 404.1512(d)(1). The Court recognizes "the ALJ has a duty to make a complete record," but "this requirement can reasonably require only so much." *Scheck*, 357 F.3d at 702. The Court will not hold that the ALJ is required to ascertain that the documents received from a medical source contain a complete and accurate copy of every note referring to the claimant, particularly in a situation such as this where, as noted by Plaintiff, the records from Park Center are "ample," Pl. Br. at 23 [DE 18], and Plaintiff was represented by counsel. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[T]he burden was on [the plaintiff] to explain why she was disabled as a result of her depression. . . . This is especially true considering [the plaintiff] was represented by counsel throughout the

pendency of the proceedings.") (citing *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)); *see also Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable, . . . but only if . . . the medical support is not *readily discernable.*") (quoting *Barnett*, 381 F.3d at 669 (7th Cir. 2004)) (quotation marks omitted); *Skarbek*, 390 F.3d at 504 ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled.").

Fourth, Plaintiff argues that the ALJ erred by discounting Dr. Marshall's opinion on the basis that he did not "indicate the extent to which the claimant's history of substance abuse would cause restrictions." AR 34. Plaintiff argues that this is an improper reason to discount Dr. Marshall's findings, since the findings are consistent with other medical source conclusions that Plaintiff's substance abuse problems were not material and substance abuse is not one of the enumerated factors from 20 C.F.R. §§ 404.1527(c). The Commissioner argues that it was not unreasonable for the ALJ to discredit Dr. Marshall's opinion in part because of its failure to consider Plaintiff's substance addiction since the ALJ found that Plaintiff's substance addiction disorder was a severe impairment. Although the Court might be concerned if this were the only basis the ALJ gave for discrediting Dr. Marshall's opinion, the ALJ considered the factors laid out in 20 C.F.R. § 404.1527(c) for determining the weight to be given a treating physician, including this "other factor." 20 C.F.R. § 404.1527(c)(6). That he also considered this additional ground does not mean that his decision is unsupported by substantial evidence; to the contrary, it suggests that the ALJ was thorough in his articulation.

Plaintiff also argues that Dr. Marshall's assessment that Plaintiff would miss about four days

of work each month is consistent with other evidence in the record and therefore should not have been discounted. The ALJ did not specifically mention the absentee prediction in his decision, but very clearly laid out his conclusion that Dr. Marshall's "assessment of [Plaintiff's] unlimited ability to interact appropriately with others is very inconsistent with the claimant's testimony and treatment record." AR 34. Although it is likely that some of Dr. Marshall's opinion was consistent with the rest of the record, it was not error for the ALJ to give the opinion as a whole little weight on the grounds that much of it was not supported by the record, as he explained.

Plaintiff's last argument about the factors weighed by the ALJ is that the ALJ failed to explain why he gave greater weight to the state agency psychologist when psychiatrists are generally entitled to greater weight, especially when they are also treating physicians and when, as here, the treating physician's report is more current. Although a physician's specialty and treatment relationship with the claimant are relevant to the weight given their opinion by the ALJ, specialty and treatment are merely two of the factors to be considered. *See* 20 C.F.R. § 404.1527(c). Likewise, an ALJ need not necessarily give greater weight to the most recent assessment. *See, e.g., Rudicel v. Astrue*, 282 Fed. App'x. 448, 452 (7th Cir. 2008) ("because there is a substantial amount of evidence in the record in support of the ALJ's decision, he is authorized to give greater weight to the state agency doctors' opinions than to [the treating physician]'s later opinions").

"It is for the ALJ to determine how much weight to give to the various medical opinions presented in a case, and [the Court] will uphold that decision as long as it is supported by substantial evidence." *Rudicel*, 282 Fed. App'x. at 453 (citing *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985); *Strunk v. Heckler*, 732 F.2d 1357, 1364 (7th Cir.1984); *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). In this case, the ALJ discounted Dr. Marshall's questionnaire after considering

the relevant factors and "minimally articulated" his reasons, meeting the "very deferential standard that [the Seventh Circuit] ha[s], in fact, deemed 'lax.'" *Elder*, 529 F.3d at 415 (quoting *Berger*, 516 F.3d at 545). Accordingly, the ALJ's decision to afford little weight to Dr. Marshall's opinion will not be disturbed.

## B.    GAF Scores

Plaintiff also brings up Plaintiff's GAF scores in her argument. Although she initially mentions the GAF scores in the section of her brief addressing the weight given to the opinion of Dr. Marshall, it appears that Plaintiff is arguing more broadly that the ALJ erred in failing to include a discussion of the GAF scores as part of his analysis of her mental health problems. The Commissioner argues that the ALJ was not required to expressly identify Plaintiff's GAF scores in his opinion, especially given the voluminous medical records in this case.

A GAF score alone is not determinative of disability. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score") (quoting *Wilkins v. Barnhart*, 69 Fed. App'x. 775, 780 (7th Cir. 2003)). In this case, there was a voluminous record and the ALJ concluded that Plaintiff did suffer limitations as a result of her mental health. Because the ALJ described how he reached his conclusion regarding Plaintiff's mental health, including his consideration of medical expert opinions, the ALJ's decision on this point will not be disturbed.

## C.    Hypothetical to Vocational Expert

Plaintiff also argues that the ALJ's hypothetical question to the VE did not adequately reflect the Plaintiff's limitations in concentration, persistence, and pace. The Commissioner contends that the ALJ did account for Plaintiff's limitations by restricting the hypothetical to "unskilled work

involving only occasional contact with the public and co-workers."

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record.  *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted).  If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform.  *Kasarsky*, 335 F.3d at 543.

Where there are limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases."  *O'Connor-Spinner*, 627 F.3d at 619.  A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform" or  "when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations." *Id.*  However, "[t]his exception to the general rule . . . does not apply where . . . the ALJ poses a series of increasingly restrictive hypotheticals to the VE" out of concern "that the VE's attention is focused on the hypotheticals and not on the record."  *Id.*

In this case, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace.  He did not include the specific terminology "concentration, persistence, or

pace" in the hypotheticals posed to the VE, although he did include the limitation that the "work involv[e] only occasional contact with the public and co-workers." AR 76. This limitation is insufficient to account for Plaintiff's limitation in concentration, persistence, and pace. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Young*, 362 F.3d at 1004 (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations). Furthermore, although the VE had reviewed at least some of Plaintiff's file, the ALJ posed a series of increasingly restrictive hypotheticals to the VE and explicitly focused the VE's testimony on the testimony, directing the VE to "disregard any information you may have gathered from reading the file or listening to the testimony." AR 76. Later in the hearing, when the VE was asked to address Plaintiff's claimed limitations, he testified that "the nature of [Plaintiff]'s interpersonal capabilities . . . is going to make it very difficult for her to sustain employment." AR 79. Accordingly, the Court cannot conclude that the hypotheticals posed to the VE sufficiently accounted for Plaintiff's limitations in concentration, persistence, and pace, and must remand for new VE testimony. The ALJ is directed to incorporate all relevant limitations, including Plaintiff's moderate difficulties with task completion and focus, in his hypotheticals to the VE.

**CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Opening Brief

of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 18] and **REMANDS** this matter for

further proceedings consistent with this opinion.

SO ORDERED this 28th day of August, 2013.


s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:      All counsel of record